IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

CIVIL ACTION FILE NO.: 0:18-cv-03083-JMC

| INNOVATIVE GLOBAL SYSTEMS, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **STIPULATION AND ORDER FOR** |
| v. | ) | **ELECTRONICALLY STORED** |
| | ) | **INFORMATION ("ESI")** |
| ZONAR SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Federal Rule of Civil Procedure 26(f), the above-captioned Plaintiff and Defendant (collectively, the "Parties") mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving and producing such information and materials. To the extent that this Stipulation does not address certain issues, those issues remain open for resolution in a separate Stipulation, negotiated by the Parties or ordered by the Court. This Stipulation does not limit the obligation of the Parties to produce materials other than electronically stored information.

Except as specifically set forth herein, this Stipulation does not alter or affect the applicability to this matter of the Federal Rules of Civil Procedure, Federal Rules of Evidence, or Local Rules for the U.S. District Court for the District of South Carolina. This Stipulation may be modified by any subsequent agreement of the parties or any Order of the Court in this matter. The date of the Parties' Execution of this Stipulation shall be the date on which the Parties file this Stipulation, including the actual or electronic signatures of counsel for both Parties, for approval by the Court.

A.  **Electronically Stored Information.**

1.  **Scope of Preservation**. The Parties agree that the duty to preserve potentially relevant and discoverable documents and ESI has been ongoing for as long as this litigation has been pending or was reasonably foreseeable.

2.  **Preservation Duty**. The Parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control. With respect to preservation of ESI, the Parties agree as follows:

    a.  The parties shall preserve all discoverable and potentially relevant documents and ESI within their possession, custody, or control but shall not otherwise be required to modify the procedures used by them in the ordinary course of business to back-up and archive data.

    b.  Absent a showing of good cause by the requesting Party, the following categories of ESI need not be preserved:

        i.  Deleted, slack, fragmented, or other data only accessible by forensics.

        ii.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

        iii.  Online access data such as temporary internet files, history, cache, cookies, and the like.

        iv.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

        v.  Backup data that are substantially duplicative of data that are more accessible elsewhere.

        vi.  Server, system, or network logs.

        vii.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

       viii.    Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g. smartphones), provided that a native copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or cloud storage).

3. **Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving information for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege. Nothing in this Stipulation shall be interpreted to require the disclosure of either irrelevant information or relevant information. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI except as expressly provided herein.

4. **Other Preservation Obligations Not Affected.** Nothing in this Stipulation shall affect any other obligations of the Parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, or in response to other pending or anticipated litigation. In addition, nothing in this Stipulation shall eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

5. **Authentication.** Each Party stipulates to a presumption of authenticity for electronic documents produced from its own servers or custodians, when such documents appear to have been authored, generated or prepared by that Party or one of that Party's employees or agents. The producing Party bears the burden of coming forward with evidence to demonstrate the lack of authenticity of any of its own documents, and the Parties agree to meet and confer in good faith regarding any authentication issues relating to documents presumed to be authentic under this provision.

6. **Document Search Protocol.** Each Party shall conduct a reasonable and proportional search for all ESI and documents within its possession, custody, or control that are responsive to any Request for Production of Documents served by any Party; provided, however, that the Parties may withhold documents subject to any objection but will work in good faith to resolve such objections before presenting any dispute concerning documents to the Court. The Parties may meet and confer to further identify and negotiate reasonable and mutually agreeable protocols for searches of other types of ESI and documents.

7. **Email Search Protocol.** Except as provided below with respect to electronic mail ("email") produced, collected, and/or reviewed prior to the Parties' Execution of this Stipulation, the Parties shall use the following procedure to identify and produce emails responsive to the Parties' Requests for Production of Documents under Rule 34 of the Federal Rules of Civil Procedure. Each Party shall conduct a reasonable and proportional search for such non-email ESI documents within its possession, custody, and control. The Parties may meet and confer to further identify and negotiate reasonable and mutually agreeable protocols for searches of non-email ESI documents.

    a. *Data Limit.* The Parties agree that neither Party will be required under this email search protocol to review and/or produce more than ten (10) gigabytes (GB) of total data, which shall be calculated based on native files and excludes image files, audio files, video files, presentation files (e.g., Microsoft PowerPoint), and similar large file types, resulting from all of the other Party's email search queries.

    b. *Phased Email Searches.* The Parties agree that email searches under this protocol will be separated into two distinct phases. For purposes of describing this phased email search protocol, the Party submitting an email search request will be referred to herein as the

Requesting Party, and the Party to whom the request is submitted will be referred to herein as the Responding Party.

  c. *First Phase of Email Searches.* In the first phase, each Requesting Party may submit search queries for up to five (5) custodians. Each Responding Party's obligation to review and produce email returned by the Requesting Party's search queries will be limited by the Requesting Party's overall 10 GB limit, but there will otherwise be no set limit on the number of search queries that each Requesting Party may submit for each of its five custodians in this first phase, provided that the Requesting Party does not submit an abusive number of search queries. Each Responding Party also reserves the right to object on other grounds to any search query or custodian submitted by the Requesting Party. Searches in this first phase of email searches shall proceed as follows:

    i. For each email search query submitted by the Requesting Party to the Responding Party, the Requesting Party shall submit to the Responding Party the search query, the name of the custodian whose email is to be searched, and the time period in which it seeks to have that custodian's emails searched.

    ii. After receiving an email search query from the Requesting Party, the Responding Party shall run the search query for the identified custodian and time period, determine the total amount of native data (excluding image files, audio files, video files, presentation files (e.g., Microsoft PowerPoint) and similar large file types) returned by the search, and report the amount of data to the Requesting Party.

    iii. If the data amount reported by the Responding Party for a particular search query is within the amount of data remaining in the Requesting Party's 10 GB overall limit, the Requesting Party shall then determine whether it desires the Responding Party to review the search results for potential production to the Requesting Party, in which case the search will count against the Requesting Party's data limit remaining of its 10 GB, or whether the Requesting Party would prefer to modify the search query to either broaden or narrow it before having the search results reviewed by the Responding Party for potential production to the Requesting Party.

iv. As each Party progresses through this email search protocol, it will be the sole responsibility of each Requesting Party to manage the ongoing amount of data available to it from its initial 10 GB limit and to structure its search queries accordingly.

d. *Second Phase of Email Searches.* If a Party has completed all of its searches for each of the five (5) custodians identified in the first phase, as described above, and has data available to it remaining from its 10 GB limit, the Party may proceed to the second phase of emails searches. In the second phase, each Requesting Party may submit search queries for up to three (3) additional custodians. Searches shall proceed as described above with respect to the first phase, and each Requesting Party's ability to submit additional search queries for its three custodians will be limited only by that Requesting Party's remaining available data. Each Responding Party reserves the right to object on other grounds to any search query or custodian submitted by the Requesting Party in this second phase.

e. *Search Query Guidelines.* The Parties shall make their best efforts to narrowly tailor proposed search queries for issues that are relevant to a particular custodian acknowledging the following:

i. Indiscriminate queries such as the producing Party's name, the requesting Party's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduces the risk of overproduction;

ii. A conjunctive combination of multiple words or phrases (e.g. "computer" and "system") narrows the search;

iii. A disjunctive combination of multiple words or phrases (e.g. "computer" or "system") broadens the search; and

iv. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production.

f. *Additional Custodians and/or Search Queries.* To the extent that a Requesting Party believes that it has good cause to search email of one or more additional custodians beyond the number allowed in either the first phase or second phase, as described above, or to exceed its 10 GB data limit, the Parties shall work together in good faith to accommodate the Requesting Party's additional search without overly burdening the Responding Party. To the extent that the Parties are unable to agree to such an accommodation, the Court may hear, for each Party, contested requests for up to three additional custodians and up to three additional search queries per custodian.

g. *Document Review Guidelines*. A producing Party should review the emails identified by the requested searches for responsiveness to a Party's Requests for Production of Documents and/or privilege. The producing Party should not produce emails that are not responsive or that are privileged. However, a failure by the producing Party to review emails for attorney–client privilege and/or attorney work-product protection shall not constitute a waiver of the privilege or protection, and does not preclude the producing Party from seeking the return of such emails under Paragraphs F.1-4 of this Stipulation and Order.

h. *Emails Produced or Searched Prior to the Execution of This Stipulation*: To the extent that a Party produced or searched emails prior to the Parties' Execution of this Stipulation, within fourteen (14) days of the Court entering an Order approving this Stipulation, that Party shall provide the following information related to all emails produced or searched prior to the Execution of this Stipulation:

    i.    A list of all custodians whose email was searched in connection with the Party's search for and collection of the responsive emails;

    ii.    For each custodian identified in Paragraph A.7.h.i. above, the timeframe for all email that was searched;

iii. For each custodian identified in Paragraph A.7.a.i. above, all search terms and queries used to search for responsive email; and

iv. The data size, in GBs, of any emails that have been collected through the searches described in accordance with Paragraphs A.7.h.i-iii above but not yet reviewed.

To the extent a Requesting Party requests a review of emails collected but not previously reviewed, the review of such emails will be subtracted from that Party's 10 GB limit. Any emails reviewed at the request of a Requesting Party following the Execution of this Stipulation shall be deducted from that Requesting Party's 10 GB limit.

8. **Parent–Child Relationships.** Parent–Child relationships (the association between an attachment and its parent Document) must be preserved in such a way that a Document and any attachments to that Document are produced in the same production set and the relationships identifiable. The Parties agree to provide beginning attachment and ending attachment fields in the database load file to capture the entire production number range for the parent/child(ren) documents.

9. **Deduplication.** A Party is only required to produce a single copy of a responsive document and a Party may de-duplicate responsive ESI which are determined to be duplicative (based on MD5 or SHA-1 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. However, metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced. If IGS produced or collected to be produced an email prior to the Execution of this ESI Stipulation, and, if the same email is later responsive to a search term proposed by Zonar, that email is considered a duplicate, and IGS will not be required to re-produce that email.

10. **Email Threading.** The Parties may use software to identify email threads. If the Parties agree to the use of email threading software, the Parties must agree on the reasonable

reduction of lesser inclusive email threads prior to the commencement of document review. Further, if the Parties agree to the reasonable reduction of lesser inclusive email threads from document review and/or production, the Parties will be required to maintain all parent child relationships (i.e., if a lesser inclusive email has attachments that are not part of the more inclusive email, then the lesser inclusive email and attachments must be produced in their entirety).

11. **Exception Logs.** ESI that cannot be reviewed, produced and/or imaged because of technical issues should be identified as an exception file and included on a log that lists the file name, custodian, and reason for the exception (i.e., corruption, unavailable password protection, proprietary software, or other technical issue). The producing Party shall provide a copy of this log to the receiving Party upon completion of document production. If the receiving Party requests production of any files listed on the exception log, the Parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

12. **Password Protected Files.** The Parties will make reasonable efforts to identify any potentially relevant ESI that is password protected or encrypted and undertake to remove those passwords in order for the documents to be searched and/or reviewed. If a Party's efforts are unsuccessful, that Party shall identify the file(s) at issue as described in Paragraph 11 herein and the Parties should meet and confer to discuss next steps, if any.

B.  **Format for Production.**

   1.  **The Parties stipulate to the following methods of production:**

      a.  *Hard Copy Documents.* (i) All hard copy documents will be scanned and converted to single page TIFF images and produced following the same protocol set forth herein or otherwise agreed to by the Parties. (i) Images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents. (ii) Document breaks for paper documents shall be based on Logical Document Determination (or "LDD"), rather than on physical document breaks. (iii) The database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and PRODVOLUME.

      b.  *Metadata Fields and Processing.* Each of the metadata and coding fields set forth in **Appendix 1** that can be extracted shall be produced for that document. The Parties are not obligated to manually populate any of the fields in **Appendix 1** if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and PRODVOLUME. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct.

      c.  *TIFFS.* Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique Bates number, followed by the extension ".TIF". Original document orientation should be maintained where practical (i.e., portrait to portrait and landscape to landscape).

      d.  *Text Files.* For each document originating in electronic format, a text file containing the full text of each document should be provided along with the image files and

metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The Parties agree that the full text and/or OCR of any document will not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

    e. *Database Load Files*. An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance, Relativity, iPro). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

    f. *Cross-Reference Image File Registration.* An image load file (.opt, .lfp or .dii) that can be loaded into commercially acceptable production software (e.g., Opticon, iPro). Each production image (TIFF or JPG) in a production must be referenced in the corresponding image load file.

    g. *Bates Numbering.* All images must be assigned a unique and sequential Bates number. Bates numbers should be endorsed on the lower right corner of all production images and will be a unique, consistently formatted identifier, i.e. alpha prefix along with a fixed length number (e.g., ABC_0000001). The number portion of the Bates number will be zero-filled. The format of the Bates numbering convention should not change in subsequent productions.

    h. *Native File Productions.* The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and display "See Native Document", or similar language, on the TIFF image. The

native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

    i. *Microsoft Office files, WordPerfect, other standard documents (e.g. Google Docs and PDF documents).* Microsoft Office files, WordPerfect, other standard documents, such as PDF documents and the like, will be converted to single-page TIFF images and produced consistent with the specifications herein. If the document contains comments or tracked changes, the TIFF images shall be generated to include the comments or track changes contained in the file or the document shall be produced in native format.

    j. *Email and attachments.* E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the database load file shall include a field in which the producing Party shall identify the production range of all attachments of each e-mail.

    k. *Spreadsheets.* The Parties shall produce spreadsheets (e.g. MS Excel, Google Sheets) in native format, where available and not redacted. If a spreadsheet requires redaction, then TIFF images of the spreadsheet after the redaction has been applied will be provided and the native file and full text will be withheld. A text file of the remaining non-redacted text will be provided.

    l. *Presentations.* The Parties shall produce presentations, including PowerPoint slides, either in native format, or rendered to TIFF in "notes" format to include the full slide image together with any speaker notes following the appropriate slide image.

m. *Good Cause for Additional Requests.* If good cause exists to request production of specified files in native format, the Party may request such production and provide an explanation of the need for native file review.

n. *Digital Photographs.* Digital photographs will be produced as image files at their original resolution with production numbers branded on the image.

o. *Embedded Files.* Embedded files shall be treated as separate files. The load file shall include a field in which the producing Party shall identify, for each document containing an embedded file, the production range of any such embedded file. This production range may be identified in the same field as the production range of an e-mail attachment (BEGATTACH, ENDATTACH).

p. *Other Documents or Data.* Before any Party produces certain structured or other electronic data that is not suitable for inclusion in an e-discovery database, such as databases, CAD drawings, GIS data, videos, websites, social media, etc., the Parties will meet and confer to discuss the appropriate format for the production.

q. *Color Documents.* Documents originally in color, wherein color provides necessary context shall be produced in color. Documents produced in color shall be produced as single page JPG files. A Party may request that a reasonable number of documents be produced in a black and white format if producing certain documents in color imposes an unreasonable or undue burden or expense.

r. *Redactions.* In the event that a document requires redaction, the Parties agree that native files, full text and/or OCR, and specified metadata fields may be excluded. A text file of the remaining non-redacted text shall be provided. As indicated within **Appendix 1** metadata fields for exclusion in Redacted documents include SUBJECT, SOURCEPATH, and

FILENAME. The production load file field shall be populated to indicate the document contains a redaction. All redacted information shall be covered with an image that says "REDACTED" and a brief description of the reasons for the redaction, *e.g.,* "REDACTED –PRIVILEGE." Redactions shall not be applied without using the word "REDACTED" to indicate the location of the redaction.

      s.    *Production Media.* Each Production shall be identified by a sequential volume number corresponding to the Party (e.g., "[Defendant Party] 001", "[Plaintiff Party] 001").

      t.    *Searchable Text.* Searchable text of entire documents will be produced either as extracted for all documents that originate in electronic format, or, for paper documents and any documents from which text cannot be extracted, as text generated using OCR technology. For redacted documents, the text of the redacted version of the document will be produced. Searchable text will be produced as a document-level multi-page ASCII text file with the text file named the same as the BEGBATES field in the data file; text files will be placed in a separate folder or directory for delivery.

      u.    *Encryption.* Industry-standard encryption tools and practices must be used when transferring data between parties. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

**C.**    <u>**Third-Party Documents.**</u> A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that Third Parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. If the non-Party production is not Bates-stamped, the Issuing Party will brand the non-Party production images with unique prefixes and Bates numbers prior to producing

them to the opposing Party per the technical specifications outlined in this Stipulation. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Third Parties to object to a subpoena.

**D.      Costs of Document Production.** Unless this Court orders otherwise, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

**E.      Filing and Use of Produced Documents.**

1.      Once a document has been produced with a Bates number, the Parties shall make their best efforts to only use a Bates-stamped version of that document in all Court filings, depositions, and other relevant matters. This does not limit or restrict a Party from referencing or citing a document without a Bates stamp that was previously filed with the Court in later Court filings, *i.e.,* the Parties may continue to reference and cite exhibits to the Complaint in forthcoming Court filings although the exhibits do not have Bates stamps.

2.      This Stipulation does not alter or modify the Parties' Confidentiality Agreement, which was fully executed on September 19, 2019.

**F.      Protection of Privilege and Work Product Immunity.**

1.      The Parties agree that this Stipulation invokes the protections afforded by Rule 502 of the Federal Rules of Evidence. As used herein, "privilege" means both the attorney–client privilege and work-product immunity doctrine.

2.      A Party may seek the return and/or destruction of any document produced in response to discovery requests in this action that the Party later claims should have been withheld on grounds of a privilege, including the attorney–client privilege and the work product doctrine (collectively referred to as "Inadvertently Produced Document").

3. A Party may request the return of any Inadvertently Produced Document by identifying such document (in a Clawback Notice) and stating the basis for withholding such document from production in accordance with Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. Once the Clawback Notice is given by the producing Party, the receiving party shall comply with Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. The producing Party will provide replacement production containing all non-privileged documents that were contained in the original production media. Electronic copies of the Inadvertently Produced Document shall be removed from any electronic system or database of the receiving Party promptly upon receiving the Clawback Notice. If the Inadvertently Produced Document requires redaction only, the producing party shall promptly after making the Clawback Request, provide to the receiving Party a redacted version of the document by submitting a replacement production containing the original production with the redacted documents included. The disclosure of an Inadvertently Produced Documents shall not constitute a waiver of the applicable privilege(s) under any circumstances. This stipulation is specifically intended to supplant the provisions of Federal Rule of Evidence 502(b).

4. If the Clawback Request is made during or in preparation for a deposition, the examining and defending counsel shall meet and confer at the earliest opportunity to determine appropriate steps under this circumstance and consistent with this Stipulation to return the document, redact the document or withdraw the claim of privilege.

G. **Privilege Logs.** The Parties agree that within a reasonable time after any document production, the producing Party will produce a privilege log including:

1. a database number for every document that was withheld;
2. alternatively, a Bates number for any document partially produced with redactions;
3. a statement indicating whether the document was privileged, work product, or both;

4. a description for why that particular privilege or immunity applied;

5. the file name or email subject line;

6. the date the document was last modified or sent;

7. if the document is an email, letter, text message, or other form of written correspondence, the sender and all recipients of the document; and

8. the current and all previous custodians of the document.

**H.** **<u>Scope of Agreement</u>**.  The Parties agree that this Stipulation shall govern the discovery of electronically stored information and paper documents with respect to the issues addressed herein. The Parties have worked in good faith to identify and agree to the foregoing discovery procedures. Despite their best efforts, however, the Parties recognize that they cannot, at this early stage of the case, predict how this matter will unfold, and they agree to continue to meet and confer and negotiate in good faith as issues arise.  This Stipulation may be revised or amended by agreement between the Parties.

    IT IS ORDERED

| | |
|---|---|
| April 3, 2020 | <u>s/J. Michelle Childs</u> |
| Columbia, South Carolina | J. Michelle Childs |
| | United States District Judge |

Respectfully submitted, this the 26th day of February, 2020.

| | |
|---|---|
| */s/Jordan M. Crapps* | */s/Neil C. Jones* |
| John T. Lay, Jr. | Neil C. Jones, Federal Bar No. 5470 |
| Fed. Bar I.D. No.: 5539 | NELSON MULLINS RILEY & |
| Email: jlay@gwblawfirm.com | SCARBOROUGH LLP |
| Jordan M. Crapps | Greenville ONE |
| Fed. Bar I.D. No.: 12418 | 2 W. Washington Street, 4th Floor |
| Email: jcrapps@gwblawfirm.com | Greenville, South Carolina 29601 |
| For the firm of | Telephone: (864) 373-2260 |
| GALLIVAN, WHITE & BOYD, P.A. | neil.jones@nelsonmullins.com |
| Post Office Box 7368 | |
| Columbia, SC 29202 | Carmen Harper Thomas, Federal Bar No. 10170 |
| Telephone: 803.779.1833 | NELSON MULLINS RILEY & |
| Facsimile: 803.779.1767 | SCARBOROUGH LLP |
| | |
| Joseph A. Schouten | 1320 Mail Street, 17th Floor |
| Email: jas@wardandsmith.com | Columbia, South Carolina 29201 |
| (*Admitted Pro Hac Vice*) | Telephone: (803)799-2000 |
| Marla S. Bowman | carmen.thomas@nelsonmullins.com |
| Email: msbowman@wardandsmith.com | |
| (*Admitted Pro Hac Vice*) | David V. Carlson *(pro hac vice)* |
| For the firm of | DaveC@seedip.com |
| WARD AND SMITH, P.A. | Timothy Boller *(pro hac vice)* |
| Post Office Box 33009 | TimB@seedip.com |
| Raleigh, NC 27636-3009 | Marc C. Levy *(pro hac vice)* |
| Telephone: 919.277.9100 | MarcL@seedip.com |
| Facsimile: 919.277.9177 | Jeffrey E. Danley *(pro hac vice)* |
| | JeffD@seedip.com |
| Dated: February 26, 2020 | Thomas A. Shewmake *(pro hac vice)* |
| | TomShewmake@seedip.com |
| | Syed M. Abedi *(pro hac vice)* |
| | SyedA@seedip.com |
| | SEED IP LAW GROUP LLP |
| | 701 Fifth Avenue, Suite 5400 |
| | Seattle, Washington 98104 |
| | Telephone (206) 622-4900 |
| | |
| | Dated: February 26, 2020 |

# Appendix 1: Metadata and Coding Fields

The Parties agree to produce a metadata database load file with following fields in the order displayed below.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Document start |
| ENDBATES | Document end |
| BEGATTACH | Family start |
| ENDATTACH | Family end |
| PGCNT | Image count |
| ATTACHCOUNT | Child (attachment) count |
| PARENTID | Parent ID |
| CHILDID | Child ID List |
| FILETYPE | Document type (Email, File, Attachment) |
| CUSTODIAN | Custodians (ALL) |
| MD5HASH | MD5 Hash value |
| APPLICATION | Application name |
| FILENAME | File name |
| FILEEXT | File extension |
| FILESIZE | File size (as bytes) |
| CREATEDATE | Date created (mm/dd/yyyy US or dd/mm/yyyy EU) |
| CREATETIME | Time created (hh:mm:ss AM|PM) |
| SENTDATE | Date email sent (mm/dd/yyyy US or dd/mm/yyyy EU) |
| SENTTIME | Time email sent (hh:mm:ss AM|PM) |
| RECEIVEDDATE | Date email received (mm/dd/yyyy US or dd/mm/yyyy EU) |
| RECEIVEDTIME | Time email received (hh:mm:ss AM|PM) |
| MODIFIEDDATE | Date modified (mm/dd/yyyy US or dd/mm/yyyy EU) |
| MODIFIEDTIME | Time modified (hh:mm:ss AM|PM) |
| FROM | From |
| TO | To |
| CC | CC |
| BCC | BCC |
| EMAILSUBJECT | Message subject |
| SOURCEPATH | Source Path |
| AUTHOR | Document Author |
| SUBJECT | OLE Subject |
| TITLE | OLE Title |
| NATIVELINK | Native link |
| TEXTLINK | Text link |
| CONFIDENTIALITY | Confidentiality designation |
| REDACTED | Redactions exist in document |
| PRODVOLUME | Identifying production volume number |